Aym Techs., LLC v. Scopia Cap. Mgmt. LP, 2021 NCBC 20B.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 21788

AYM TECHNOLOGIES, LLC,

      Plaintiff and
      Counterclaim-
      Defendant,

v.

SCOPIA CAPITAL MANAGEMENT
LP; and COMMUNITY BASED
CARE, LLC,

      Defendants and
      Counterclaim-
      Plaintiffs.

**SECOND AMENDED ORDER AND
OPINION ON THE SCOPIA PARTIES'
MOTION FOR LEAVE TO AMEND
COUNTERCLAIM, AYM'S MOTION
FOR SUMMARY JUDGMENT, AND
THE SCOPIA PARTIES' MOTION FOR
SANCTIONS AND AWARD OF
ATTORNEYS' FEES**

1. **THIS MATTER** is before the Court on (i) Defendants-Counterclaim Plaintiffs Scopia Capital Management LP ("Scopia") and Community Based Care, LLC's ("CBC"; together, the "Scopia Parties") Motion for Leave to Amend Counterclaim (the "Motion to Amend"), (ECF No. 230); (ii) Plaintiff-Counterclaim Defendant Aym Technologies, LLC's ("Aym") Motion for Summary Judgment (the "Motion for Summary Judgment"), (ECF No. 232); and (iii) the Scopia Parties' Motion for Sanctions and Award of Attorneys' Fees (the "Motion for Attorneys' Fees"), (ECF No. 237), (collectively, the "Motions").

2. This case arises from failed negotiations between Aym's Chief Executive Officer ("CEO"), Lewis Quinn ("Quinn"), and the Scopia Parties concerning Aym's potential investment in CBC or one of the Scopia Parties' investment funds. The Scopia Parties contend that Quinn, on behalf of Aym, misrepresented Aym's intention to invest while simultaneously seeking to either sell Aym to the Scopia Parties or, in

the event that the Scopia Parties did not purchase Aym, cause Aym to directly compete with them.

3. Having considered the Motions, the related briefing, and the arguments of counsel at the hearing on the Motions, the Court, in the exercise of its discretion, hereby **DENIES** the Scopia Parties' Motion to Amend, **GRANTS** Aym's Motion for Summary Judgment, and **DENIES** the Scopia Parties' Motion for Attorneys' Fees.

*Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Eric M. David, Jennifer K. Van Zant, and Cordon M. Smart, for Plaintiff-Counterclaim Defendant Aym Technologies, LLC.*

*Pollack Solomon Duffy LLP, by Barry Pollack, and Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Benjamin R. Holland and Carl Short, for Defendants-Counterclaim Plaintiffs Scopia Capital Management LP and Community Based Care, LLC.*

Bledsoe, Chief Judge.

I.

FACTUAL BACKGROUND

4. The Court does not make findings of fact on a motion for summary judgment. *See Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142 (1975). Rather, the Court summarizes the relevant evidence of record, including both the facts in dispute and those that are uncontested, to provide context for the claims and the Motions.

5. Quinn is the CEO of Aym, a software company that develops programs for intellectual and developmental disability ("IDD") providers in North Carolina. (Aff. Lewis Quinn ¶¶ 1, 5 [hereinafter "Quinn Aff."], ECF No. 137.) Aym's software

package, OnTarget, enables IDD providers to operate their businesses from a single, integrated platform. (Quinn Aff. ¶ 6.)

6. At some point prior to the summer of 2015, Quinn devised a plan for Aym to acquire certain customers and thereby provide "a foundation for a larger venture" to "acquire non-customer providers" and offer "higher quality services to the market[.]" (Quinn Aff. ¶ 22.) According to Quinn, he memorialized this strategy in a paper called the "Vertical Integration Plan" (the "Plan"), which contained information on "how to identify targets for acquisition," how to "start with a foundation company and thereafter acquire smaller targets," and how to "finance the acquisitions." (Quinn. Aff. ¶ 25.)

7. Scopia, a New York-based asset management firm, was at this same time also interested in acquiring smaller providers within the IDD industry. (Aff. David Wittels ¶ 2 [hereinafter "Wittels Aff."], ECF No. 119.2.) By 2014, Scopia was involved in a venture to "roll up" providers around the country and open a North Carolina office. (Wittels Aff. ¶ 2.)

8. In February 2015, David Wittels ("Wittels"), a soon-to-be-member of CBC's board of directors and a former member of Scopia, (Aff. David Wittels ¶ 1 [hereinafter "Wittels Aff. II"], ECF No. 266), had a chance encounter with Quinn's friend, Douglass Kahn ("Kahn"), at which time they discussed Scopia's efforts to create what would ultimately become CBC, (*see* May 2015 Emails, at SJ 003–005 [hereinafter "May 2015 Emails"], ECF No. 236.1). CBC was later formed in June 2015 to serve as a holding

company for the investments of various Scopia-affiliated funds. (Scopia Parties' Answer Compl. & Countercl. ¶ 7 [hereinafter "Countercls."], ECF No. 69.)

9. In May 2015, shortly before CBC's formation, Wittels proposed to Kahn an investment opportunity in CBC. (May 2015 Emails.) Kahn suggested that Wittels speak with Quinn regarding Aym's potential investment in CBC. (May 2015 Emails.) In July 2015, Kahn forwarded to Quinn communications between Kahn, Wittels, and Gene Rodgers ("Rodgers"), another investor in the IDD industry, regarding the potential CBC investment opportunity. (Decl. Carl M. Short III [hereinafter "Short Decl."] Ex. G, ECF No. 195.2.)

10. At that point, Quinn, acting for Aym, (*see, e.g.*, Short Decl. Ex. N, at 63:25–64:3, ECF No. 265), began negotiations with Scopia regarding Aym's potential investment in Scopia and CBC. Quinn "believed an opportunity existed where Aym could join the newly-formed CBC and operate the new IDD company with the addition of further targets identified by Aym." (Quinn Aff. ¶ 58.)

11. As these discussions progressed, Quinn sought to sell Aym to CBC. (*See* Wittels Aff. II ¶ 14 ("At some point in or about late July or early August 2015, Mr. Quinn asked about the possibility of CBC purchasing Aym[.]"); July 27 Quinn Email, at SJ 001, ECF No. 236.1 (asking Rodgers whether "there would be any support for a non-cash acquisition of Aym[,]" "[a]n equity for equity transaction"); July 27 Quinn Email, at SJ 048, ECF No. 236.1 (forwarding to Wittels Aym's vertical acquisition strategy to "give [Wittels] a pretty good idea of how [Quinn] s[aw] the business").) Rodgers, however, expressed doubt that "an equity play would work," (July 27

Rodgers Email, at SJ 001, ECF No. 236.1), and Wittels testified that the Scopia Parties were upfront in their discussions with Quinn that CBC was not interested in purchasing Aym, (Wittels Aff. II ¶ 14.)

12. Quinn, meanwhile, indicated that Aym was no longer interested in acquiring companies within the IDD industry. In particular, Wittels testified that he spoke with Quinn by telephone on 26 July 2015 and Quinn had stated that while he "had considered having Aym acquire IDD service providers[,]" "such an effort at expansion by Aym into IDD services was a thing of the past." (Wittels Aff. II ¶ 8.) According to Wittels, Quinn made the same representation several days later on 31 July 2015. (Wittels Aff. II ¶ 12.)

13. During July and August 2015, Scopia communicated to Quinn important details regarding the investment opportunity in CBC. In particular, in August 2015, Scopia advised Quinn that Scopia had recruited Brook Phillips ("Phillips") to serve as an executive officer for CBC. (*See* Short Decl. Ex. U, ECF No. 265; Short Decl. Ex. 2, at 38:2–5, ECF No. 231.4.)

14. The Scopia representatives also negotiated Quinn's potential role with CBC. Rodgers suggested that Quinn could fill an executive role, although Rodgers admitted he had never thought of hiring Quinn as an executive when he knew Aym to be a competitor in the industry. (Dep. Wittels 67:23–68:11, at SJ 103–04, ECF No. 236.1; July 26 Emails, at SJ 047, ECF No. 236.1.) As negotiations continued, however, Quinn felt a lack of enthusiasm from the Scopia representatives regarding his involvement as CEO, and he emailed Wittels on 10 August 2015 to say that "the

relationship [was] feeling a little too forced" and that he was "going to pass on the deal." (Aug. 10 Emails, at SJ 022–24, ECF No. 236.1 ("I am not sure why but I don't see . . . enthusiasm with my candidacy for the CEO position. I am only interested in this relationship being 100% positive from the outset.").)

15. Nevertheless, at Rodgers's urging, the parties met on 11 August 2015 to discuss Quinn's potential role at CBC. (Aug. 10 Emails, at SJ 026–27, ECF No. 236.1 ("I know things have moved fast, and I think we need to take a break from emails and calls and spend a few hours together.").) A week later Wittels sent Quinn a draft employment agreement but offered him the position of CBC's president rather than CEO. (Aug. 18 Email & Draft Employment Agreement, at SJ 008–21, ECF No. 236.1; Dep. Lewis Quinn [hereinafter "Quinn Dep."] 22:3–5, at SJ 082, ECF No. 236.1 ("I remember challenging him on—and saying, you—you told me in that meeting that it would be—that I would be CEO[.]").)

16. On 24 August 2015, Quinn emailed Wittels that he had sent the employment agreement to his attorney and was expecting to hear from him that day. (Aug. 24 Email, at SJ 006, ECF No. 236.1.) The following day, Quinn submitted to a psychological evaluation as part of the CBC recruitment process. (Quinn Dep. 31:22–32:25, 35:1–36:21, at SJ 089–92.)

17. On 31 August 2015, Wittels asked Quinn whether there was any update from Quinn's attorney about the employment agreement, but Quinn did not reply. (Aug. 31 Email, at SJ 006, ECF No. 236.1.) Although Quinn later testified that he

"felt like there could be further negotiation," (Quinn Dep. 37:18–19, at SJ 093,), Wittels heard nothing further from Quinn until February 2016, (Wittels Aff. II ¶ 19).

18. Between Wittels's August 31 email and Quinn's next communication in February 2016, nVolve Partners, LLC acquired Aym as part of Quinn's roll-up venture, (Short Decl. Ex. J., at 5:15–6:23, 170:13–71:25, ECF No. 265), and Phillips agreed to go to work for Aym, (Short Decl. Ex. M, ECF No. 195.2 ("Brook resigned yesterday. Starts with us in 4 weeks.")). Neither the Counterclaim allegations nor the record evidence reflects when or why Phillips declined the offered position with CBC. (Short Decl. Ex. W, at 48:3–13, ECF No. 265 (including Wittels's testimony that "for whatever reason—and I don't know, maybe you can tell me—[Phillips's employment] didn't work out, did it?").)

II.

PROCEDURAL BACKGROUND

19. Aym filed its Complaint initiating this action on 5 December 2016 against Rodgers, the Scopia Parties, and Scopia HCM Partners, LLC ("Scopia HCM"). (Compl., ECF No. 1.)[1] The Scopia Parties, Scopia HCM, and Rodgers subsequently moved to dismiss the Complaint, (*see* ECF Nos. 11, 22), which the Court granted in part and denied in part on 9 February 2018 ("Order and Opinion on the Motions to Dismiss"). In its ruling, the Court dismissed all claims against Scopia HCM. (Order & Op. Mots. Dismiss, ECF No. 58.)

---

[1] The case was designated as a mandatory complex business case on 17 January 2017, (Designation Order, ECF No. 3), and assigned to the undersigned on 25 January 2017, (Assignment Order, ECF No. 6).

20. Thereafter, on 14 March 2018, the Scopia Parties timely answered the Complaint and asserted counterclaims against Aym for alleged misrepresentation and alleged unfair and deceptive trade practices under N.C.G.S. § 75-1.1. (Countercls. ¶¶ 29, 35.) After the completion of discovery, on 27 February 2019, Rodgers and the Scopia Parties moved for summary judgment on the remaining claims against them. (Rodgers's Mot. Summ. J., ECF No. 97; Scopia Parties' Mot. Summ. J., ECF No. 119.) On 16 October 2019, the Court granted both motions for summary judgment, leaving only the Scopia Parties' counterclaims against Aym for trial ("Order and Opinion on the Motions for Summary Judgment"). (Order & Op. Mots. Summ. J., ECF No. 175.)

21. On 6 December 2019, the Scopia Parties moved to stay the Counterclaim proceedings in this action (the "Motion to Stay") pending the resolution of a related case in the Supreme Court of New York for New York County (the "New York Action"). (Scopia Parties' Mot. Stay, ECF No. 177.) The Court denied the Motion to Stay, reasoning that the Counterclaims and the New York Action involved "very different conduct." *Aym Techs., LLC v. Rodgers*, 2020 NCBC LEXIS 33, at *6 (N.C. Super. Ct. Mar. 19, 2020).

22. The Scopia Parties thereafter moved to reopen discovery on the Counterclaims, contending that emails recently produced in the New York Action revealed that Aym withheld information related to the Counterclaims that it should have produced during discovery in this action. (Scopia Parties' Mot. Reopen Disc., ECF No. 195.) After full briefing and hearing, the Court granted the Scopia Parties'

motion in part and denied the motion in part on 24 July 2020 (the "July 24 Order"). (Order Scopia Parties' Mot. Reopen Disc. [hereinafter "July 24 Order"], ECF No. 210.) In the July 24 Order, the Court reopened discovery in light of Aym's discovery misconduct for the limited purpose of permitting the Scopia Parties to conduct time- and topic-limited depositions of Kahn and Quinn. Upon further motion by the Scopia Parties, the Court subsequently required Aym, by separate order dated 1 October 2020 (the "October 1 Order"), (Order Scopia Parties' Mot. Enforce Order, ECF No. 220), to provide written, verified answers to seven interrogatories that the Court deemed "relevant to the Scopia Parties' counterclaims and . . . appropriate for further inquiry as relating to the procedures Aym employed in responding to the Scopia Parties' discovery requests[,]" (Oct. 1 Order ¶ 8 (internal quotation marks omitted).)

23. On 10 December 2020, the Scopia Parties filed the Motion to Amend and Motion for Attorneys' Fees. (ECF Nos. 230, 237.) On 14 December 2020, Aym filed its Motion for Summary Judgment. (ECF No. 232.)[2]

24. After full briefing, the Court held a hearing on the Motions on 9 February 2021 (the "Hearing"), at which all parties were represented by counsel. The Motions are now ripe for resolution.

---

[2] The Motions were timely filed consistent with the Court's Order dated 19 August 2020, (ECF No. 211), as amended by the October 1 Order. The Court notes that the evidentiary record before the Court on the Motions includes evidentiary materials that were obtained or created after the Court reopened discovery and thus were not before the Court on Defendants' motions for summary judgment. (*See* ECF Nos. 97, 119, 175.)

## III.

## LEGAL STANDARD

25. "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 680 (2018) (quoting N.C. R. Civ. P. 56(e)). "[A] genuine issue is one which can be maintained by substantial evidence." *Kessing v. Nat'l Mortg. Corp.*, 278 N.C. 523, 534 (1971). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference." *Daughtridge v. Tanager Land, LLC*, 373 N.C. 182, 187 (2019) (citation and internal quotation marks omitted).

26. On a motion for summary judgment, "[t]he evidence must be considered 'in a light most favorable to the non-moving party.'" *McCutchen v. McCutchen*, 360 N.C. 280, 286 (2006) (quoting *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470 (2004)). "[T]he party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491 (1985).

27. The party moving for summary judgment may satisfy its burden by proving that "an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense, or by showing through discovery that the opposing party cannot produce evidence to support an essential

element of [the] claim[.]" *Dobson v. Harris*, 352 N.C. 77, 83 (2000) (citations omitted). "If the moving party satisfies its burden of proof, then the burden shifts to the non-moving party to 'set forth *specific facts* showing that there is a genuine issue for trial.'" *Lowe v. Bradford*, 305 N.C. 366, 369–70 (1982) (quoting N.C. R. Civ. P. 56(e)). If the nonmoving party does not satisfy its burden, then "summary judgment, if appropriate, shall be entered against [the nonmovant]." *United Cmty. Bank (Ga.) v. Wolfe*, 369 N.C. 555, 558 (2017) (quoting N.C. R. Civ. P. 56(e)).

IV.

ANALYSIS

28. Aym seeks summary judgment on the Scopia Parties' claims for misrepresentation and unfair and deceptive trade practices under N.C.G.S. § 75-1.1, North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). (Mem. Law Supp. Aym's Mot. Summ. J. 1 [hereinafter "Aym's Br. Supp. Mot. Summ. J."], ECF No. 245.) The Scopia Parties seek, through their Motion to Amend, to add allegations showing that Aym engaged in competitive acts between August 2015 and January 2016, thus broadening the relevant time frame of Aym's purported misconduct as currently alleged. (Scopia Parties' Mem. Supp. Mot. Leave Amend Countercl. 1 [hereinafter "Scopia Parties' Br. Supp. Mot. Amend"], ECF No. 231.) Finally, the Scopia Parties seek to recover attorneys' fees from Aym based on Aym's persistence in pursuing its now-dismissed claims. (Scopia Parties' Mem. Supp. Mot. Sanctions & Award Att'ys' Fees 1 [hereinafter "Scopia Parties' Br. Supp. Mot. Att'ys' Fees"], ECF No. 238.) The Court addresses each Motion in turn, starting with the Motion to

Amend, then the Motion for Summary Judgment, and finally the Motion for Attorneys' Fees.

A.    Motion to Amend

29.    The Scopia Parties seek to amend their Counterclaims to allege new facts concerning Aym's recruitment of Brook Phillips based on emails they obtained after Aym's discovery misconduct prompted the Court to reopen discovery on the Counterclaims. (July 24 Order.) The Scopia Parties move to add one new paragraph and a handful of new allegations in others to support their contention that Aym's recruitment of Phillips began without their knowledge prior to January 2016, but after they disclosed their interest in hiring Phillips as a CBC executive during their negotiations with Aym in August 2015. (Scopia Parties' [Proposed] First Am. Countercl. ¶ 25 [hereinafter "Proposed Countercls."], ECF No. 230.1.)

30.    The focus of these new allegations is a 6 January 2016 email (Short Decl. Ex. M), which shows that Phillips agreed to work for Aym as of January 2016, and new deposition testimony from Quinn, (Short Decl. Ex. 2, at 38:2–5), which, according to the Scopia Parties, permits a factfinder to conclude that Quinn began recruiting Phillips for Aym after he learned in August 2015 of Scopia's interest in hiring Phillips for CBC. (*See* Scopia Parties' Br. Supp. Mot. Amend 1 ("These facts go to the heart of the issue of Aym's intent to deceive Scopia and CBC into believing that Aym's principal, Lewis Quinn, wanted to invest in a Scopia fund when he actually sought only to sell Aym to Scopia, or, if that did not work, to gather information that Aym

could use to interfere with Scopia's launch of CBC for his and Aym's undisclosed competitive purposes.").)

31. Aym argues in opposition that the "Motion is a backdoor attempt by [the Scopia Parties] to allege claims arising under the non-disclosure agreement executed by Lewis Quinn that are currently pending in parallel proceedings in the New York [Action]." (Aym Mem. Law. Opp'n Mot. Leave Amend Countercl. 1 [hereinafter "Aym's Br. Opp'n Mot. Amend"], ECF No. 253.) Aym contends that the Motion should be denied on grounds of undue delay, futility, and unfair prejudice. (Aym's Br. Opp'n Mot. Amend 10, 13, 19.)

32. While Rule 15(a) of the North Carolina Rules of Civil Procedure ("Rules(s)") provides that leave to amend "shall be freely given when justice so requires," N.C. R. Civ. P. 15(a), leave may be denied in the court's discretion, including on grounds of "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice and futility of the amendment." *Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 89 (2008) (citation omitted).

33. "The futility standard under Rule 15 is essentially the same standard used in reviewing a motion to dismiss under Rule 12(b)(6), but provides the Court liberal discretion to find that an amendment lacks futility." *Simply the Best Movers, LLC v. Marrins' Moving Sys., Ltd.*, 2016 NCBC LEXIS 28, at *5–6 (N.C. Super. Ct. Apr. 6, 2016). "When an amendment would be futile in light of the propriety of summary judgment on a plaintiff's claim, it is not an abuse of discretion for the trial court to deny the amendment." *N.C. Council of Churches v. State*, 120 N.C. App. 84, 93 (1995).

Because, as explained below, the Court concludes that dismissal of the Counterclaims is proper even if the Court considers the amendments the Scopia Parties seek to advance, the Motion to Amend shall be denied as futile.

B. Motion for Summary Judgment

34. Aym seeks summary judgment dismissing the Scopia Parties' counterclaims for fraud and for violation of section 75-1.1. Those claims are both premised on the Scopia Parties' contention that Aym falsely misrepresented its interest in investing in CBC or one of the Scopia Parties' funds to gain valuable competitive information to facilitate either Aym's sale to the Scopia Parties or Aym's competitive activities. (Aym's Br. Supp. Mot. Summ. J. 1; *see* Scopia Parties' Br. Opp'n Mot. Summ. J. 1, ECF No. 264.)

1. Proper Party

35. As an initial matter, Aym contends that dismissal is appropriate because, as pleaded, liability under the Counterclaims falls to Quinn individually, not to Aym. (Aym's Br. Supp. Mot. Summ. J. 19.) The Court disagrees.

36. First, the Scopia Parties have alleged, and Aym has consistently taken the position in this litigation, that Quinn acted during the relevant time period on behalf of Aym. (*See, e.g.*, Countercls. ¶ 12.) Quinn has acknowledged the same under oath. (*See, e.g.*, Short Decl. Ex. N 63:25–64:3 (testifying that he (Quinn) was "the person at Aym who was communicating on behalf of Aym with Mr. Wittels and the others"); Aff. Lewis Quinn ¶¶ 20–21 [hereinafter "Quinn Aff. II"], ECF No. 36 (stating that discussions were conducted with Aym).) Aym cannot now disavow its prior position

when it becomes advantageous to do so on summary judgment. *See Gould v. Kemper Nat'l Ins. Cos.*, No. 95-1883, 1996 U.S. App. LEXIS 4844, at \*2 (7th Cir. 1996) (noting that "a plaintiff is not allowed to change position on critical factual elements of her case once their legal significance becomes clear"); *Shire Laby's., Inc. v. Corepharma, LLC*, Civ. Action No. 06-2266 (SRC), 2008 U.S. Dist. LEXIS 88617, at \*24 (D.N.J. Nov. 3, 2008) (noting that to allow a party "to change position [on factual matters at summary judgment] would reward manipulation and allow [the party] to gain an unfair advantage").

37. The Scopia Parties have also expressly pleaded that the investment opportunity they pursued with Quinn contemplated the investment of Aym's capital, not Quinn's. (*See* Countercls. ¶ 32.) And the evidence of record before the Court, viewed in the light most favorable to the Scopia Parties, supports this conclusion. In particular, Quinn repeatedly conducted business from his Aym email address, (*see, e.g.*, July 27 Quinn Email, at SJ 001; Aug. 10 Emails, at SJ 022–24; Aug. 24 Email, at SJ 006), and has acknowledged that the relevant discussions were between the Scopia Parties and Aym, not Quinn. (Quinn Aff. II ¶¶ 20–21).

38. Accordingly, for each of these reasons, the Court concludes that Aym is not entitled to summary judgment on this ground.

2. <u>Misrepresentation</u>

39. The Scopia Parties allege a single misrepresentation claim, which is based on Aym's alleged fraud. (Countercls. ¶¶ 29–34; Proposed Countercls. ¶¶ 30–35.) Although they do not distinguish in their Counterclaims or proposed amendments

whether the claim is based on fraudulent misrepresentation, fraudulent concealment, or both, the parties have chosen to address both types of claims in their briefing, (*see* Aym's Br. Supp. Mot. Summ. J. 13, 17; Scopia Parties' Br. Opp'n Mot. Summ. J. 9, 18), and the Court will consider the claim accordingly.

a. <u>Affirmative Misrepresentation</u>

40. Aym contends that to the extent the Scopia Parties' misrepresentation claim is based on affirmative misrepresentations (i.e., "actual fraud"), the claim should be dismissed for the Scopia Parties' failure to plead with particularity under Rule 9(b) and to offer evidence that Aym made any representations with the intent to deceive or that the Scopia Parties reasonably relied upon any such representations.

41. As an initial matter, the Scopia Parties do not appear to contest Aym's contention that their Counterclaims, as originally pleaded, cannot survive scrutiny under either Rule 9(b) or Rule 56. (*See* Scopia Parties' Br. Opp'n Mot. Summ. J. 10 (framing Aym's intent in terms of the proposed allegations that "they were interested only in selling Aym or gathering information that could be used to hurt Scopia and CBC while launching Aym's competitive venture"); *see also generally* Scopia Parties' Br. Opp'n Mot. Summ. J. (failing to address Aym's Rule 9(b) argument).)

42. The Scopia Parties appear instead to focus their arguments on defeating Aym's Rule 56 motion and on Quinn's alleged statement to Wittels on 25 July 2015 and again on 31 July 2015 that Aym's "effort at expansion" was a "thing of the past." (Wittels Aff. II ¶¶ 8, 12.)[3] They argue that Quinn's statements to Wittels are the

---

[3] Aym contends that the Court should ignore Wittels's affidavit because it contradicts his prior deposition testimony. (Aym's Reply Supp. Mot. Summ. J. 5, ECF No. 269); *see, e.g.,*

critical misrepresentations upon which they reasonably relied to their detriment and which serve as the basis for their affirmative misrepresentation claim. They contend that, absent those representations, they never would have incurred the significant time and expense they did by, among other things, drafting Quinn's employment agreement and arranging for his psychological evaluation. (Scopia Parties' Br. Opp'n Mot. Summ. J. 15–18; Wittels Aff. II ¶¶ 8, 12.)

43. But the Scopia Parties do not incorporate Wittels's recently proffered testimony into their proposed amended Counterclaims. And while that testimony may be evidentiary support for those proposed Counterclaims, Rule 9(b) is only concerned with whether their allegations of fraud are pleaded with particularity. N.C. R. Civ. P. 9(b) ("In all averments of fraud, . . . the circumstances constituting fraud or mistake shall be stated with particularity."). To that end, our Supreme Court has long held that to satisfy Rule 9(b)'s requirements, a plaintiff must "alleg[e the] time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry*, 302 N.C. 77, 85 (1981). This the Scopia Parties have failed to do.

44. Instead, the Scopia Parties have alleged that Quinn asked Rodgers "to inform Scopia that Quinn was interested in making a substantial investment in the

*Pinczkowski v. Norfolk S. Ry. Co.*, 153 N.C. App. 435, 440 (2002) ("[A] party opposing a motion for summary judgment cannot create a genuine issue of material fact by filing an affidavit contradicting his prior sworn testimony."). The Court concludes that it need not decide this issue because Aym is entitled to summary judgment even considering the averments in the affidavit.

fund that would own CBC[,]" (Countercls. ¶ 10; Proposed Countercls. ¶ 10), and that Quinn sent an email to "confirm[ ] his representation that he (Quinn) was interested in making a substantial investment in the opportunity[,]" (Countercls. ¶ 11; Proposed Countercls. ¶ 11). The Scopia Parties further allege in conclusory fashion that Quinn "pretend[ed] to be a potential investor[,]" (Countercls. ¶ 18; Proposed Countercls. ¶ 18), and "made several representations . . . confirming Quinn's purported interest in a substantial investment in CBC[,]" without specifying what those specific representations were, (Countercls. ¶ 30; Proposed Countercls. ¶ 31).

45. Most significantly, however, none of these allegations sets forth the misrepresentation on which the Scopia Parties now purport to base their affirmative misrepresentation claim: Wittels's affidavit testimony that Quinn specifically misrepresented Aym's competitive efforts to be a "thing of the past." Given this failure of pleading, the Court necessarily concludes that the Scopia Parties have failed to allege the content of the misrepresentation on which they base their claim as required under Rule 9(b). *See Terry*, 302 N.C. at 85. Accordingly, the Court concludes that summary judgment is proper dismissing the Scopia Parties' affirmative misrepresentation claim for failure to plead either the original or proposed amended Counterclaims with requisite particularity under Rule 9(b).

b. <u>Fraudulent Concealment</u>

46. To satisfy Rule 9(b)'s particularity requirement for their fraudulent concealment claim, the Scopia Parties must specifically allege:

> (1) the relationship [between plaintiff and defendant] giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or

the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what [the defendant] gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance.

*Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *9 (N.C. Super. Ct. June 18, 2007) (adopting *Breeden v. Richmond Cmty. College*, 171 F.R.D. 189, 195–96 (M.D.N.C. 1997)).

47. Generally, commercial parties engaging in an arms-length transaction with one another do not have a duty to disclose. *See, e.g.*, *B & F Slosman v. Sonopress, Inc.*, 148 N.C. App. 81, 87 (2001) (concluding that there was no duty to disclose between "sophisticated businessmen"); *Comput. Decisions, Inc. v. Rouse Office Mgmt. of N.C., Inc.*, 124 N.C. App. 383, 389 (1996) (concluding that there was no duty to disclose simultaneous negotiations with a third party where sophisticated parties were negotiating at arm's length); *C.F.R. Foods, Inc. v. Randolph Dev. Co.*, 107 N.C. App. 584, 589 (1992) (concluding there was no duty to disclose where defendant had a full opportunity to make inquiries but failed to do so); *RREF BB Acquisitions, LLC v. MAS Props., L.L.C.*, 2015 NCBC LEXIS 61, at *28 (N.C. Super. Ct. June 9, 2015) ("Typically, commercial parties in arms-length negotiations with one another do not have a duty to disclose.").

48. A duty to disclose will arise, however, when: (1) "a fiduciary relationship exists between the parties to the transaction" or (2) there is no fiduciary relationship but either "a party has taken affirmative steps to conceal material facts from the

other" or "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Sidden v. Mailman*, 137 N.C. App. 669, 675 (2000) (citation omitted).

49. As with their affirmative misrepresentation claim, the Scopia Parties do not appear to challenge Aym's attack on the allegations and evidence in connection with the original or proposed Counterclaims relating to the fraudulent concealment claim. (*See* Scopia Parties' Br. Opp'n Mot. Summ. J. 18–19 (stating only that "[t]he evidence supports a finding that Aym misrepresented that it had ceased competitive activities, and that it therefore had an ongoing duty to disclose its competitive efforts to Scopia and CBC in the context of their negotiations[.]").) Instead, the Scopia Parties contend that Quinn's alleged misrepresentations of Aym's future competitive intent, alleged for the first time in the proposed Counterclaims, give rise to Aym's duty to disclose. (Scopia Parties' Br. Opp'n Mot. Summ. J. 19.) The Court concludes, however, that they do not.

50. Significantly, "[t]o show a duty to disclose based on affirmative steps to conceal a material fact, a plaintiff must allege the specific affirmative acts taken to conceal that fact." *Vitaform, Inc. v. Aeroflow, Inc.*, 2020 NCBC LEXIS 132, at *31 (N.C. Super. Ct. Nov. 4, 2020); *see Zagaroli v. Neill*, 2016 NCBC LEXIS 106, at *23 (N.C. Super. Ct. Dec. 29, 2016) (finding no duty to disclose where defendants failed to allege "any specific affirmative acts" to conceal forged checks). While the Scopia Parties do allege that Quinn hid his desire to sell Aym and Aym's competitive

ventures, (*see, e.g.,* Countercls. ¶ 18; Proposed Countercls. ¶ 18), they fail to specifically allege what steps Quinn took to hide this information. Indeed, their allegations to this effect are largely conclusory and generally state that Quinn "pretend[ed] to be a potential investor to interfere with the launch of CBC and serve his and Aym's own undisclosed competitive interests[.]" (Proposed Countercls. ¶ 12; *see also* Proposed Countercls. ¶¶ 18–19, 31–32 (to similar effect).)

51. The only factual allegations they now assert in support of these conclusions are that Quinn started "a competing venture in the North Carolina IDD market[,]" (Proposed Countercls. ¶ 19), which he did not disclose to the Scopia Parties, (Proposed *see* Countercls. ¶¶ 18, 31), that he "undertook efforts to dissuade Phillips from joining CBC in favor of the competitive venture that Quinn hid from Scopia and CBC[,]" (Proposed Countercls. ¶ 25), and that "[b]y in or about December 2015, Phillips . . . had made plans to join Quinn's and Aym's new competitive venture[,]" (Proposed Countercls. ¶ 29).

52. But there are no allegations suggesting that either Quinn or Aym ever agreed with the Scopia Parties that they would not form a competitive venture in North Carolina, and the Scopia Parties have not identified any legal duty that prevented Quinn or Aym from pursuing this course. Moreover, given that nothing precluded Quinn or Aym from creating a competing business, the pleaded facts do not give rise to a duty requiring Aym to disclose its competitive plans in its arms' length negotiations with the Scopia Parties. *See, e.g.*, *Comput. Decisions, Inc.*, 124 N.C. App. at 389 (lessor had no duty to disclose to lessee that it was negotiating a competing

lease with another party); *B & F Slosman*, 148 N.C. App. at 86 (no duty to disclose where claimants "were sophisticated businessmen, who were experienced with [the relevant] transactions").

53. And although the Scopia Parties plead that Quinn dissuaded Phillips from joining CBC and that Phillips made plans to join Quinn and Aym's new business, they conspicuously fail to allege that Aym sought Phillips out for employment (rather than the other way around), that either Phillips or Aym was contractually restricted from working with the other, that Aym secured Phillips's employment while either he or Quinn were negotiating employment with the Scopia Parties, or that Aym took steps to actively hide this information from the Scopia Parties when negotiations broke down in August. Although the Scopia Parties offer evidence through Wittels's latest affidavit that Aym specifically lied about its competitive intent, as noted above, that evidence is not specifically pleaded in either the original or proposed amended Counterclaims and thus may not be considered for purposes of Rule 9(b) analysis. *See* Rule 9(b) (establishing the pleading standard rather than evidentiary standard for fraud claims); *In re Estate of Loftin*, 21 N.C. App. 627, 630 (1974) (stating that "[i]n order to comply with Rule 9(b), the pleadings must state the facts to be relied upon to establish fraud").

54. For each of these reasons, therefore, the Court concludes that the Counterclaims, as originally pleaded and as proposed, fail Rule 9(b)'s particularity requirement and must be dismissed.

3. UDTPA

55. The Scopia Parties assert a UDTPA claim against Aym based on the same conduct supporting its misrepresentation claim. Because the misrepresentation claim fails, as explained above, the UDTPA claim based on this same conduct likewise must fail. *See, e.g., Combs & Assocs., Inc. v. Kennedy*, 147 N.C. App. 362, 373–74 (2001) (affirming summary judgment dismissing unfair or deceptive trade practices claim when the underlying claims had been dismissed and plaintiff had alleged no other unfair or deceptive acts); *Silverdeer, LLC v. Berton*, 2013 NCBC LEXIS 21, at *28–29 (N.C. Super. Ct. Apr. 24, 2013) (holding that UDTPA claim derivative of fraud and other claims "rises and falls" with those claims).

56. The Court further concludes that the UDTPA claim fails for the separate and independent reason that Aym's alleged misconduct was not "in or affecting commerce" under the UDTPA. Section 75-1.1 declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" N.C.G.S. § 75-1.1(a). " '[C]ommerce' includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." *Id.* § 75-1.1(b).

57. The UDTPA, however, does not reach all wrongs in a business setting, including misconduct in the context of a securities transaction. *See Skinner v. E. F. Hutton & Co.*, 314 N.C. 267, 274 (1985) (holding that securities transactions are beyond the UDTPA's scope). Under the securities exception, the Court's inquiry must focus on "whether the transactions at issue involved securities or other financial

instruments involved in raising capital." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 304 (2004); *see Latigo Invs. II, LLC v. Waddell & Reed Fin., Inc.*, 2007 NCBC LEXIS 17, at *11 (N.C. Super. Ct. June 11, 2007) (stating that this is "the *only* relevant question for [the Court]" and that the "proper focus under the relevant cases is . . . 'what is the purpose of the transaction' " (emphasis added)). If the transactions at issue involve capital raising, our courts have held that the securities exception to section 75-1.1 will apply. *White*, 166 N.C. App. at 304.

58. Here, the Scopia Parties have repeatedly pleaded that their negotiations with Quinn and Aym were for the purpose of raising investment capital. (*See* Countercls. ¶¶ 8, 10–11; Proposed Countercls. ¶¶ 8, 10–11.) Indeed, the gravamen of the Counterclaims is that Quinn and Aym misrepresented and failed to disclose material information in that capital-raising process. (*See e.g.*, Countercls. ¶¶ 1, 10, 12; Proposed Countercls. ¶¶ 1, 10, 12.) As such, the Court concludes that the securities exception applies. *See HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 595 (1991) (holding that "[r]evolving fund certificates are a cooperative's functional equivalent of traditional corporate securities[,]" are not "in or affecting commerce[,]" and are therefore outside the scope of the UDTPA as "capital-raising devices"); *White*, 166 N.C. App. at 304 (holding that "[w]ithout some evidence that the [transaction at issue] constituted securities or other capital-raising instruments[,]" the transactions fell within the scope of the UDTPA).

59. The Scopia Parties attempt to avoid this result by contending that because their day-to-day business involves capital raising activities, the securities exception

does not apply. (Scopia Parties' Br. Opp'n Mot. Summ. J. 21 n.4.) While this argument appears to fall within the statute's embrace as articulated in *HAJMM Co.*, which held that " '[b]usiness activities' is a term which connotes the manner in which businesses conduct their regular, day-to-day activities," 328 N.C. at 594, the argument fails to consider that the Supreme Court in *HAJMM* was likewise motivated to apply the securities exception because the transactions at issue—the purchase and sale of securities—were subject to pervasive state and federal regulation, *HAJMM Co.*, 328 N.C. at 594 ("[T]o extend the [UDTPA] to securities transactions would create overlapping supervision, enforcement, and liability in this area, which is already pervasively regulated by state and federal statutes and agencies."). That is precisely the case here, where the Scopia Parties' investment solicitation of Quinn and Aym and any purchase and sale of investment securities that might have followed are likewise subject to extensive state and federal securities regulation.

60. Because our courts have repeatedly held that the only question for the Court under this exception is whether the basis for the transaction involved securities, *see id.*; *White*, 166 N.C. App. at 304; *Latigo Invs. II, LLC*, 2007 NCBC LEXIS 17, at *11, the Court concludes that the considerations motivating the recognition of a securities exception to section 75-1.1 are fully present here and that the exception should apply as a result.

61. Aym's Motion shall therefore be granted, and the Court shall dismiss the Scopia Parties' UDTPA claim.

C.    Motion for Attorneys' Fees

62.    The Scopia Parties contend that they should be awarded attorneys' fees of $367,920.02 for the fees they incurred between the Court's 9 February 2018 Order and Opinion on the Motions to Dismiss and its 16 October 2019 Order and Opinion on the Motions for Summary Judgment.  (Scopia Parties' Br. Supp. Mot. Att'ys' Fees 17.)  They seek attorneys' fees under N.C.G.S. §§ 6-21.5, 1D-45, and 75-16.1 on the grounds that Aym failed to withdraw its remaining claims after the Court's Order and Opinion on the Motions to Dismiss revealed their lack of merit and because Aym's discovery misconduct further justifies an award of attorneys' fees.  (Scopia Parties' Br. Supp. Mot. Att'ys' Fees 1–2.)

1.    N.C.G.S. § 6-21.5

63.    In determining whether to impose attorneys' fees under N.C.G.S. § 6-21.5, a court is required to make findings of fact and conclusions of law.  *See Sunamerica Fin. Corp. v. Bonham*, 328 N.C. 254, 257 (1991) (quoting N.C.G.S. § 6-21.5).  The Court therefore sets forth the following findings of fact and conclusions of law to support its resolution of the Scopia Parties' request for attorneys' fees and sanctions.[4]

a.    Findings of Fact

64.    Aym commenced this action by filing its Complaint and asserting claims against the Scopia Parties and Rodgers for misappropriation of trade secrets, conversion, violation of the UDTPA, and tortious interference, and against Rodgers

---

[4] Any Finding of Fact that is more appropriately deemed a Conclusion of Law, and any Conclusion of Law that is more appropriately deemed a Finding of Fact, shall be so deemed and incorporated by reference as a finding of fact or conclusion of law, as appropriate.

alone for breach of contract. (Compl. ¶¶ 26, 30, 38, 41, 47, 53.) Aym alleged that it had provided Rodgers with its Plan and other confidential information, that Rodgers had passed that information on to the Scopia Parties, and that the Scopia Parties had then used that information to purchase targets from Aym's acquisition list. (*See, e.g.*, Compl. ¶ 31.)

65. The Scopia Parties moved to dismiss the Complaint pursuant to Rule 12(b)(6), arguing in relevant part that Aym had failed to allege facts identifying a trade secret, or alternatively, facts showing that Aym had reasonably protected its trade secret. (Scopia Parties' Mem. Supp. Mot. Dismiss Pursuant Rule 12(b)(6) (REFILED) 5, ECF No. 13.) The Court subsequently dismissed several claims but allowed Aym's claims for misappropriation of trade secrets and violation of the UDTPA to proceed against the Scopia Parties, but only "to the extent [Aym] allege[d] misappropriation of the Plan." (Order & Op. Mots. Dismiss 35.)

66. The Scopia Parties subsequently filed their Motion for Summary Judgment seeking dismissal of Aym's claims, contending that Aym had failed to produce evidence that the Plan contained a list of acquisition targets and that Aym had provided the Plan to others without requesting confidentiality. (Mem. Supp. Scopia Parties' Summ. J. Mot. 20, 22, ECF No. 120.) In its Order and Opinion on the Motions for Summary Judgment, the Court held that "it cannot be disputed that the Plan does not comport with Aym's characterization of that document in its Complaint" and dismissed Aym's remaining claims. (Order & Op. Mots. Summ. J. 14–15.)

67. On 2 March 2020, the Scopia Parties moved to reopen discovery on the grounds that Aym had failed to produce emails between Quinn and Kahn relevant to the Counterclaims. (Scopia Parties' Mot. Reopen Disc.) The Court granted the motion and, among other things, permitted a further deposition of Quinn concerning Aym's discovery-related conduct. (July 24 Order.)

68. On 14 September 2020, the Scopia Parties moved to enforce the Court's July 24 Order, contending that Aym had evaded questions and indicated a lack of knowledge during the deposition and seeking to compel Aym's response to several interrogatories. (Scopia Parties' Mot. Enforce Order, ECF No. 216.) On 1 October 2020, the Court granted the motion and allowed the Scopia Parties to serve the requested interrogatories on Aym. (Order Scopia Parties' Mot. Enforce Order.)

b.    Conclusions of Law

69. Under N.C.G.S. § 6-21.5, "[a] trial court may award attorneys' fees to a prevailing party where there is 'a complete absence of a justiciable issue of either law or fact[.]'" *Willard v. Barger*, 2021 NCBC LEXIS 7, at *6 (N.C. Super. Ct. Jan. 22, 2021) (quoting N.C.G.S. § 6-21.5). "A justiciable issue has been defined as an issue that is real and present as opposed to imagined or fanciful." *Sunamerica*, 328 N.C. at 257 (citation and internal quotation marks omitted). There is a complete absence of a justiciable issue when it "conclusively appear[s] that such issues are absent even giving the pleadings the indulgent treatment they receive on motions for summary judgment or to dismiss." *Id.* (citation omitted).

70. "[T]he party against whom attorneys' fees are being considered has 'a continuing duty to review the appropriateness of persisting in litigating a claim which [is] alleged [to lack a justiciable issue].' " *Bryson v. Sullivan*, 330 N.C. 644, 660 (1992) (quoting *Sunamerica*, 328 N.C. at 258). Thus, "sanctions under N.C.G.S. § 6-21.5 may be appropriate . . . if the [claimant] persists 'in litigating the case after a point where he should reasonably have become aware that the pleading he filed no longer contained a justiciable issue.' " *Brooks v. Giesey*, 334 N.C. 303, 310 (1993) (quoting *Sunamerica*, 328 N.C. at 258).

71. "N.C.G.S. § 6-21.5 requires review of all relevant pleadings and documents in determining whether attorneys' fees should be awarded[,]" *Bryson*, 330 N.C. at 660, and "[t]he decision to award or deny attorney's fees under Section 6-21.5 is a matter left to the sound discretion of the trial court[,]" *W&W Partners, Inc. v. Ferrell Land Co.*, 2019 NCBC LEXIS 104, at *11 (N.C. Super. Ct. Dec. 6, 2019) (quoting *Persis Nova Constr., Inc. v. Edwards*, 195 N.C. App. 55, 67 (2009)).

72. Granting a Rule 12(b)(6) or Rule 56 motion, however, standing alone, does not establish a complete absence of a justiciable issue under section 6-21.5. *See, e.g.*, *Sunamerica*, 328 N.C. at 259; *Jacobson v. Walsh*, 2014 NCBC LEXIS 2, at *41 (N.C. Super. Ct. Jan. 22, 2014) ("A grant of summary judgment, standing alone, is not sufficient to support an award of attorney's fees under N.C.G.S. § 6-21.5.")

73. The Scopia Parties contend that Aym "kn[e]w or should have known" that its claims surviving the Court's Order and Opinion on the Motions to Dismiss were based on a nonexistent list within the Plan. (Scopia Parties' Br. Supp. Mot. Att'ys'

Fees 5.) They further argue that "Aym should have sought dismissal of the Complaint after the Court limited Aym's claims to those based on a document supposedly containing a list of identifiable acquisition targets when Aym knew such a document did not exist." (Scopia Parties' Br. Supp. Mot. Att'ys' Fees 12.)

74. In response, Aym points to several pieces of evidence suggesting a basis for their arguments that a Plan and list of targets existed, including, in particular, Quinn's recent deposition testimony stating that Quinn gave Rodgers a color-coded list of acquisition targets during an August 5, 2013 meeting. (Aym's Mem. Law Opp'n Scopia Parties' Mot. Sanctions & Award Att'ys' Fees 12 [hereinafter "Aym's Br. Opp'n Mot. Att'ys' Fees"], ECF No. 252; see Quinn Dep. 123:1–26:13, ECF No. 102).

75. Although the color-coded list was not made a part of the summary judgment record and, until now, Aym, which is represented by new counsel, has never contended that the color-coded list constituted or was a part of the Plan, (Scopia Parties' Reply Supp. Mot. Att'ys' Fees 2–3, ECF No. 270), the Court nonetheless concludes that the list may potentially constitute some evidence that there was not a complete lack of a justiciable issue for Aym's remaining claims, particularly given the high bar our appellate courts have articulated for awarding fees under section 6-21.5, see Sunamerica, 328 N.C. at 257 (strictly construing N.C.G.S. § 6-21.5). It is also unclear to the Court that Aym could have pleaded a successful claim on the evidence of record, although it is quite clear that Aym failed to do so.

76. The Court also rejects Aym's discovery misconduct as an alternative basis for an award of fees under section 6-21.5. Whether Aym abused the discovery rules

has no bearing on whether a justiciable controversy existed when Aym pursued its claims after the Court's Order and Opinion on the Motions to Dismiss. *See Willard*, 2021 NCBC LEXIS 7, at *9 ("The relevant inquiry under section 6-21.5 is whether a justiciable issue is present. If there is, the moving party's motion must fail." (citing *Brooks*, 334 N.C. at 310)).

77. For each of these reasons, therefore, the Court concludes that the Scopia Parties' Motion for Attorneys' Fees under N.C.G.S. § 6-21.5 should be denied.

### 2. Sections 1D-45 and 75-16.1

78. As an initial matter, because the Court has dismissed the Scopia Parties' Counterclaim for violation of section 75-1.1, their related claim for attorneys' fees under section 75-16.1 necessarily fails and must be dismissed.

79. For its part, section 1D-45 requires an award of attorneys' fees resulting from the defense of a claim for punitive damages "against a claimant who files a claim for punitive damages that the claimant knows or should have known to be frivolous or malicious." N.C.G.S. § 1D-45. Under that section, "a claim for punitive damages is 'frivolous' where its proponent can present no rational argument based upon the evidence or law in support of it." *Philips v. Pitt Cnty. Mem'l. Hosp., Inc.*, 242 N.C. App. 456, 458 (2015) (citation omitted). "Furthermore, a claim is 'malicious' where it is 'wrongful and done intentionally without just cause or excuse or as a result of ill will.'" *Id.*[5]

---

[5] The same standard applies under N.C.G.S. § 75-16.1 for frivolous or malicious UDTPA actions. *AmeriGas Propane, L.P. v. Coffey*, 2016 NCBC LEXIS 17, at *8 (N.C. Super. Ct. Feb. 17, 2016) (citing *Philips*, 242 N.C. App. at 458; *see* N.C.G.S. § 75-16.1 (providing for attorneys' fees where "[t]he party instituting the action knew, or should have known, the [UDTPA]

80.    The Scopia Parties contend that Aym knew or should have known that its claims were both frivolous and malicious because Aym "did not cite to any genuine and defensible legal basis for an award of punitive damages in its Complaint" and "persisted in its allegations long after it was clear that there was no basis for its claim[.]" (Scopia Parties' Br. Supp. Mot. Att'ys' Fees 16–17.)  The Scopia Parties, however, do not point to evidence establishing that Aym "knew or should have known" that it could present no rational argument in support of its claim for punitive damages, or that Aym's claim was made wrongfully.  *See Philips*, 242 N.C. App. at 458.  Based on the evidence of record, the Court cannot conclude that Aym knew or should have known that its claim for punitive damages was either frivolous or malicious at any point in this litigation.  *See AmeriGas*, 2016 NCBC LEXIS 17, at *9 (denying motions for attorneys' fees when the facts of record did not establish that the plaintiffs' request for punitive damages was frivolous or malicious).  The Court therefore shall exercise its discretion to deny the Scopia Parties' Motion for Attorneys' Fees under Sections 1D-45.[6]

action was frivolous and malicious"); *see also Morris v. Bailey*, 86 N.C. App. 378, 387 (1987) ("Award or denial of attorney fees under N.C.G.S. [§] 75-16.1 is a matter within the sole discretion of the trial judge.").

[6] Because the analysis and determination is the same under sections 1D-45 and 75-16.1, the Court further concludes that, even if the Court were to assume that the Scopia Defendants could prevail on their UDTPA claim, their claim for attorneys' fees under section 75-16.1 would necessarily fail for this additional reason.

## V.

## CONCLUSION

81. **WHEREFORE**, the Court hereby **ORDERS** as follows:

   a. In the exercise of the Court's discretion, the Motion to Amend is **DENIED**;

   b. The Motion for Summary Judgment is **GRANTED**, and the Scopia Parties' claims are dismissed **with prejudice**[7]; and

   c. In the exercise of the Court's discretion, the Motion for Attorneys' Fees is **DENIED**.

   **SO ORDERED**, this the 31st day of March, 2021.


   /s/ Louis A. Bledsoe, III
   Louis A. Bledsoe, III
   Chief Business Court Judge

---

[7] "The decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013). The Court concludes here, in the exercise of its discretion, that dismissal of the Scopia Parties' Counterclaims shall be with prejudice in light of the advanced stage of this litigation, the Scopia Parties' failure to vigorously prosecute their Counterclaims prior to the expiration of the original discovery period (even indicating an intent to dismiss upon the Court's dismissal of Aym's claims), and the Court's determination that the Scopia Parties have been afforded a full and fair opportunity to move to amend their Counterclaims to assert claims with supporting allegations consistent with the requirements of Rule 9(b).